IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE C.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:22-cv-00396-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Christine C. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page | 1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Born in 1969, plaintiff alleges disability beginning August 1, 1986, due to bipolar disorder, vertigo, hernia, issues due to gastric bypass, lower back pain, an injured shoulder, arthritis, and depression. Tr. 72-73. Her application was denied initially and upon reconsideration. Tr. 72-89, 91-109. On February 25, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 33-70. Prior to the hearing, plaintiff amended her alleged onset date to April 18, 2019. Tr. 213. On March 18, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-26. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 18, 2019, the amended alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "major depressive disorder, generalized anxiety disorder, bipolar disorder, obesity, and right shoulder arthritis." Tr. 17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff failed to establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> "[She] would require work which is non-production-oriented; work
> that entails routine, repetitive tasks and simple decision-making;
> work that involves no more than frequent coworker interaction and
> only occasional direct contact with the general public; capable of
> frequent, appropriate supervisor interaction; work that can be
> learned in up to six months, requiring attention to detail, but not

> more complex duties; can only lift or carry 10 pounds frequently and up to 20 pounds occasionally; can stand and/or walk for a total of 6 hours in an 8-hour workday; can sit for a total of 6 hours in a 8-hour workday; can perform pushing and pulling motions with her upper and lower extremities, within the aforementioned weight restrictions; should avoid unprotected heights and moving machinery; should be restricted to a 'relatively clean' work environment; can perform climbing, crouching, and crawling frequently, can never climb ladders, ropes, or scaffolds; and limited to frequent reaching in front, laterally, and/or overhead with the right dominant upper extremity."

Tr. 20.

At step four, the ALJ determined plaintiff is unable to perform any past relevant work. Tr. 24-25. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as marking clerk, production assembler, and mail clerk. Tr. 26.

## DISCUSSION

Plaintiff argues the ALJ erred by 1) failing to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony; 2) improperly rejecting the medical opinion evidence of Kelly Fitzpatrick, D.O., and Scott Alvord, Psy.D; and 3) rejecting without comment the lay witness testimony. Pl.'s Opening Br. 4, ECF 18.

### I.     Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general

assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work due to her anxiety, panic attacks, symptoms of depression, forgetfulness, and a right shoulder injury. Tr. 54-58. Due to her anxiety, plaintiff experienced smaller panic attacks at least once a day, with severe panic attacks occurring "a couple of times a week," which resulted in symptoms such as shortness of breath, vomiting, nausea, and a need to remain immobilized. Tr. 57-58. As for her right shoulder, she testified that her injury causes her pain daily, it impairs her ability to reach upward, and she has difficulty lifting or holding things with her right hand. Tr. 59. She further testified she cannot lift more than ten pounds, her shoulder causes her pain when she uses it repeatedly, and she does not take pain medication. Tr. 60. For her mental health, plaintiff testified she takes lamotrigine and Loxapine. Tr. 61. She also testified she suffers from side effects, such as trouble sleeping, nausea, and headaches. Tr. 61-62.

In terms of her daily activities, plaintiff testified she speaks to her children regularly, she spends time with one of her grandchildren but does not babysit him, and she takes care of two dogs and five cats. Tr. 41-43. She further testified she gets help with her pets, her daughter checks on her daily, she has friends who visit at least once a month, and she walks on the beach and hikes at least once a week. Tr. 43-45. She also testified that it is difficult for her to go shopping at large stores due to her anxiety from being around a lot of people, but she will go to smaller stores, and that her daughter does most of her grocery shopping because she shops in bulk. Tr. 48, 51. Plaintiff and her daughter do the household chores together, and her daughter handles her finances and laundry. Tr. 51-52, 55.

After summarizing the hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Regarding plaintiff's physical and mental impairments, the ALJ cited to inconsistences in plaintiff's medical records. Tr. 21-23.

In discounting plaintiff's mental health impairments, the ALJ acknowledged plaintiff's medical records. Tr. 21-22. For example, the ALJ noted that plaintiff has been diagnosed with major depressive disorder, generalized anxiety disorder, and bipolar disorder, and suffers from related symptoms, such as social anxiety, paranoia, hypervigilance, memory problems, and panic attacks. Tr. 21 (citing Tr. 366, 376, 379, 526, 539, 736, 751, 760, 989, 1153, 1283). The ALJ also noted that plaintiff has been receiving treatment in the form of outpatient counseling, therapy, and medication. Tr. 21 (citing Tr. 371, 512, 736, 742, 745, 956, 1050, 1242). Notably, the ALJ pointed to records from May, June, August, and September 2019, where plaintiff exhibited normal

behavior, judgment, thought content, insight, intact recent and remote memory, and normal mood and affect, which led to the determination that plaintiff's major depressive disorder was "in partial remission." Tr. 21 (citing Tr. 455, 535, 538, 760, 817, 825). The ALJ also included records from January, July, October, and December of 2020, which noted that plaintiff had normal mood, affect, behavior, judgment, and thought content, that she was in good compliance with treatment, and that her cognition, memory, and attention were normal. Tr. 21 (citing Tr. 988, 1007, 1036, 1045, 1289, 1292). Lastly, the ALJ made note of a January 2021 consultative psychological exam where plaintiff reported worsening panic attacks, minimally effective medications, and endorsed depression, hopelessness, lethargy, and irritability. Tr. 22 (citing Tr. 1282). Upon examination, she was depressed and tearful, but her thought processes were intact, her long-term memory was adequate, she exhibited good short-term memory, good concentration, adequate abstract thinking, insight, and judgment, while also exhibiting low average intellectual ability. Tr. 22 (citing Tr. 1283-84).

Plaintiff argues the ALJ failed to identify the testimony found not credible and link it to the evidence supporting that conclusion. Pl.'s Opening Br. 7-8, ECF 18. Plaintiff further argues that the ALJ impermissibly cherry picked the record. Pl.'s Opening Br. 8-11, ECF 18. Plaintiff is incorrect.

In regard to plaintiff's first argument, the ALJ did more than provide a general summary. As described above, the ALJ acknowledged plaintiff's diagnoses and subsequent symptoms, then provided specific citations to records indicating that plaintiff's suffering was not as severe as alleged. Plaintiff complained of disabling anxiety, panic attacks, depression, and memory issues, yet the records indicate that plaintiff consistently presented with normal mood and affect, intact memory, and depression that was in partial remission.

Plaintiff's second argument, that the ALJ cherry picked the record, is also unavailing. Plaintiff points to records from March and May 2019, in which plaintiff was first establishing care, noting that plaintiff experienced dry heaving episodes as a result of stress and anxiety, that she was unable to leave her house or grocery shop, that she was forgetful, experiencing mood fluctuations, bouts of confusion, hypervigilance, irritability, and difficulty concentrating. Pl.'s Opening Br. 9, ECF 18 (citing Tr. 533-36, 538-39). Plaintiff also noted that in June, July, September, and November 2019, she continued to experience episodes of fatigue and a reluctance to leave her home, she appeared anxious and depressed, she experienced some difficulties in wordfinding and complained people could not understand her, she experienced an instance of abnormal recent memory, and issues receiving and understanding directions from others, and she has been experiencing anger episodes. Pl.'s Opening Br. 9-10, ECF 18 (citing Tr. 526, 778, 782-83, 817, 958, 1053). Those same records, however, note that while plaintiff still experienced some difficulties, she was consistently doing better as her medications were being adjusted.

Plaintiff also pointed to records from January, June, August, and December 2020, noting that plaintiff was only receiving "some benefit from counseling," it was difficult for her to focus on the present, her mother controlled many of her adult responsibilities, she was unable to manage her appointments, she was reportedly making poor and impulsive choices, and she struggled with sleep, anxiety, and remembering to take her medication. Pl.'s Opening Br. 10, ECF 18 (citing Tr. 995, 1014, 1041, 1250). Notably, plaintiff actually stated that "therapy has been *very* beneficial," and at the time she made her complaints about her inability to focus, and stress related to her mother's interference in her life, plaintiff had been unable to see her therapist. Tr. 1014, 1041 (emphasis added). Likewise, plaintiff's poor and impulsive choices were related to her decisions around men in her dating life, that her increased anxiety was due to her children's unemployment

and her difficult relationship with her mother, and there was no indication that she struggled to remember to take her medication, only that she had forgotten to take her medication. Tr. 995, 1250.

Lastly, plaintiff cited to her 2021 psychiatric consultative examination, which will be discussed along with other medical opinions in the section below.

The ALJ also discounted plaintiff's physical impairments, notably that plaintiff alleges she cannot work due to pain she experiences in her right shoulder from an injury sustained in 2019 while at work. In discounting plaintiff's testimony, the ALJ provided a summary of treatment, noting that plaintiff had been diagnosed with right shoulder arthritis, and that an MRI revealed advanced tendinosis of the supraspinatus, moderate tendinosis of the infraspinatus and superior subscapularis, biceps tenosynovitis, a suspected SLAP tear, and advanced acromioclavicular osteoarthritis. Tr. 22 (citing Tr. 445-46, 449, 617). Examinations also showed reduced range of motion, good rotator cuff strength, tenderness at the acromioclavicular joint, normal grip strength, and that she exhibited only 1/3 of the normal strength in pushing and pulling. Tr. 22 (citing Tr. 614, 764, 812, 1023). The ALJ also noted that plaintiff has treated her right shoulder with physical therapy and injections. Tr. 22 (citing Tr. 886, 951, 1196).

Plaintiff argues the ALJ failed to identify the testimony found not credible and link it to the evidence supporting that conclusion. Pl.'s Opening Br. 7-8, ECF 18. Plaintiff is correct.

The ALJ does not adequately address plaintiff's complaints of pain. In fact, the only cited evidence in relation to plaintiff's shoulder pain made by the ALJ is to a medical record in which plaintiff stated her pain was "0/10," except that the medical record the ALJ cites to does not exist. *See* Tr. 22 (citing Tr. 524). The medical record in question was also a gynecological exam, which had nothing to do with her shoulder. While the ALJ made note that plaintiff continued receiving treatment through October 2020, the ALJ failed to provide reasoning as to why any of the cited

information was inconsistent with plaintiff's allegations regarding her inability to effectively use her right shoulder due to pain.

In sum, based on the inconsistencies between plaintiff's complaints and her results upon examination, the ALJ properly discounted plaintiff's subjective symptom testimony as it relates to her mental health based on substantial evidence in the record. As such, while plaintiff argues for a different reading of the evidence, where the ALJ's finding is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, lack of corroborating medical evidence cannot serve as the sole basis for discounting a claimant's testimony. See *Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record). Because the ALJ does not identify any other reason besides inconsistencies in the record for discounting plaintiff's mental health symptoms, the ALJ has erred.

As for plaintiff's physical impairments, the ALJ provided only a summary of medical records devoid of the reasoning necessary for this Court to meaningfully review. As such, it was error to discount plaintiff's subjective symptom testimony based on this reason. See *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

**II.     Medical Opinion Evidence**

Plaintiff asserts the ALJ improperly discredited the opinions of Kelly Fitzpatrick, DO, and Scott Alvord, Psy.D.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any

inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[2] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

When determining how persuasive a medical opinion is, supportability and consistency are the most important factors to consider. 20 C.F.R. § 416.920c(b)(2). These two factors each have a different focus. For consistency, the ALJ considers how consistent a medical opinion is with the other evidence in the record *Id.* § 416.920c(c)(2). For supportability, the ALJ considers the relevancy of the objective medical evidence and supporting explanations presented by the medical source to justify their own opinion. *Id.* § 416.920c(c)(1).

Dr. Kelly Fitzpatrick, DO, conducted a consultative exam on May 18, 2019. He noted that plaintiff should be restricted to lifting no more than five pounds above shoulder level while she undergoes six weeks of physical therapy to restore her range of motion. Tr. 658, 663. The ALJ found Dr. Fitzpatrick's opinion unpersuasive because it was unsupported by plaintiff's longitudinal medical record, it was too restrictive given plaintiff's medical history, it was internally inconsistent because it imposed lifting restrictions without reaching restrictions, it was based on a

---

[2] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

one-time examination, and Dr. Fitzpatrick did not have a chance to review plaintiff's hearing level medical record. Tr. 24.

The ALJ's reasoning, however, is unsupported. First, it is unclear what records the ALJ used in determining that Dr. Fitzpatrick's limitation was unsupported. Second, the ALJ does not explain why lifting restrictions must be accompanied by reaching limitations. Third, a consultative examination, by its very nature, is a one-time examination, and is therefore not a valid reason to discount Dr. Fitzpatrick's medical opinion. Last, while Dr. Fitzpatrick did not have a chance to review plaintiff's hearing level medical record, such a feat would have been impossible considering Dr. Fitzpatrick's examination took place in 2019, while plaintiff's hearing occurred in 2021. As such, the ALJ erred in rejecting Dr. Fitzpatrick's opinion.

Dr. Scott Alvord, Psy.D., provided a psychological consultative exam in January 2021. Tr. 1280. In his opinion, plaintiff would not have difficulty performing simple and repetitive tasks, would have severe difficulty performing detailed and complex tasks, moderate difficulty accepting instructions from supervisors, mild difficulty interacting with co-workers and the public, moderate difficulty performing work activities on a consistent basis without special or additional instructions/accommodations, moderate difficulty maintaining regular attendance, moderate difficulty completing a normal workday/workweek without interruptions from a psychiatric condition, and moderate difficulty dealing with usual stress encountered in the workplace. Tr. 1283-84. The ALJ found Dr. Alvord's opinion "somewhat consistent" because plaintiff was "no more than moderately limited in any functional area." Tr. 23. The ALJ discounted Dr. Alvord's opinion as it pertains to difficulty completing a normal workday/workweek because of plaintiff's "relatively normal presentation during the consultative examination, as she completed every task with minimal difficulty." Tr. 24. The ALJ also discounted the portion of Dr. Alvord's opinion


relating to interacting with others, noting that "[plaintiff] had no problems interacting appropriately with the examiner." Tr. 24.

The ALJ's reasoning, however, is only partially supported. The ALJ discounted Dr. Alvord's opinion regarding plaintiff's ability to complete a normal workday/workweek without interruptions from a psychiatric condition because the plaintiff had a "relatively normal presentation during the consultative examination, as she completed every task with minimal difficulty." Tr. 24. The ALJ's reasoning for discounting this portion of Dr. Alvord's opinion is unclear. While plaintiff was able to complete the tasks given to her during the exam, the ALJ does not explain how completion of those tasks translates to an ability to complete a normal workday/workweek. The ALJ also discounted Dr. Alvord's opinion regarding plaintiff's ability to accept instructions from supervisors because plaintiff "had no problems interacting appropriately with the examiner." Tr. 24. Given that Dr. Alvord made no observation regarding any difficulties plaintiff had interacting with him or his instructions when completing tasks, the ALJ did not err in discounting Dr. Alvord's opinion as it relates to plaintiff's ability to accept instructions from supervisors.

In summary, the ALJ erred in rejecting Dr. Fitzpatrick's opinion because none of the ALJ's reasoning was supported by substantial evidence. The ALJ also erred in rejecting Dr. Alvord's opinion regarding moderate difficulty in plaintiff's ability to complete a normal workday/workweek because the ALJ's reasoning was unsupported by substantial evidence. The ALJ did not err in rejecting Dr. Alvord's opinion regarding plaintiff's ability to accept instructions from supervisors.

### III. Lay Witness Testimony

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment") (emphasis in original). However, where the ALJ has properly discounted the plaintiff's subjective symptom testimony, and the lay witness has not described limitations beyond the allegations of the plaintiff, the ALJ's failure to provide germane reasons in rejecting the lay witness testimony can be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1121-22 (9th Cir. 2012).

In addition to plaintiff's own subjective symptom testimony, plaintiff's daughter provided a third-party statement. Tr, 269-76. The ALJ did not mention the lay witness testimony. The Commissioner argues this was harmless error because it alleged the same impairments as those described by the plaintiff, and the plaintiff's subjective symptom testimony was properly discounted. Def.'s Br. 14-16, ECF 23. However, the Commissioner is incorrect. As discussed above, the ALJ failed to provide specific, clear, and convincing reasons for rejecting plaintiff's subjective symptom testimony. As such, the ALJ's lack of consideration for the lay witness statement is not harmless error, and the ALJ has erred.

### IV. Remand for Further Proceedings

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or

when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); see also *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to identify specific, clear, and convincing reasons for discounting plaintiff's subjective symptom testimony, and by failing to properly evaluate the opinions of Kelly Fitzpatrick, DO, and Scott Alvord, Psy.D. Further proceedings would be useful in determining whether plaintiff's testimony and the medical opinions are, in fact, not supported by substantial evidence and allow the ALJ to resolve any necessary changes to the plaintiff's resulting RFC.

In light of the lack of reasoning in disregarding plaintiff's testimony and the medical opinions, the appropriate remedy is to remand to the Commissioner for further proceeding to provide proper reasoning as well as provide plaintiff with a psychological diagnostic exam in order to resolve any ambiguities surrounding her ability to sustain attention and concentration as well as her memory, understanding, and ability to carry out tasks. The Commissioner shall also take any further action, as necessary, and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 13th day of September, 2024.

                                          /s/ Jolie A. Russo
                                            Jolie A. Russo
                                United States Magistrate Judge